UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH MACKEY,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security Administration,<br><br>        Defendant. | Case No. ED CV 10-1073 PJW<br><br>MEMORANDUM OPINION AND ORDER |

Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration ("the Agency"), denying his application for supplemental security income ("SSI"). Plaintiff claims that the Administrative Law Judge ("ALJ") erred when he rejected the psychiatrists' opinions that he suffered from a severe psychological impairment. For the reasons set forth below, the Court finds that the ALJ did not err.

This is the second time that this case has been before the Court. The first time, the Court reversed the Agency's decision and remanded for consideration of treating psychiatrist Jeremiah Umakanthan's opinion that Plaintiff suffered from depression and had a Global Assessment of Functioning ("GAF") score of 40. (AR 379-84.) On

remand, the ALJ considered Dr. Umakanthan's findings and rejected them. (AR 357-63.) Plaintiff contends that this was error. (Joint Stip. at 3-4, 9-12.)

The starting point for the Court's analysis is not Dr. Umakanthan's opinion but, rather, the ALJ's credibility finding. The ALJ found in his most recent decision in 2010, like the one in 2007, that Plaintiff was not credible. (AR 18-20, 360-62.) Plaintiff has not challenged either finding and apparently with good reason. The record is replete with evidence that Plaintiff is motivated to obtain benefits and that he has at the very least greatly exaggerated his claims of disability, if not lied about them.

Plaintiff has applied for benefits at least seven times since 1994. (AR 12-21, 36-37.) Plaintiff's applications in the 1990s through 2001 were based on physical ailments, like headaches, chest pains, etc. (AR 36-37.) In a questionnaire he submitted with his October 2004 application, however, he added hallucinations to his list of ails. (AR 89, 97.) This is significant because Plaintiff alleged that these hallucinations began when he was a child (though he has also alleged that they began in 2004, when he was 32 years old). (AR 201, 550.) In a form he submitted four months later, Plaintiff omitted hallucinations. (AR 147-48.)

Plaintiff was involved in an automobile accident in 1999. He claimed in the first administrative hearing that he was prescribed a cane by one of his doctors to help him walk. (AR 347.) There is no record of any doctor prescribing him a cane, which the ALJ pointed out in his decision denying Plaintiff's claim for benefits in 2007. (AR 18.) Despite the ALJ's prompting, when Plaintiff returned for a second administrative hearing in March 2010, cane in hand and

explaining, again, that it had been prescribed, he failed to submit any evidence that this was true or that he needed a cane to walk. (AR 560.) Interestingly, just two months before the 2010 administrative hearing, in January 2010, Plaintiff went to consulting psychiatrist Duong's office for an examination without a cane and walked just fine without it. (AR 550.)

In a questionnaire Plaintiff submitted to the Agency in support of his application in October 2004, he claimed that he could walk only six feet. (AR 115.) There is absolutely no evidence that this was true and, in fact, the evidence suggests that it was false. (AR 209 (examining physician report from January 2005, finding Plaintiff can stand/walk for two hours in an eight-hour day).) Medical personnel who interacted with Plaintiff during the relevant period recognized that Plaintiff was likely feigning his symptoms. (AR 201-04 (examining psychiatrist noting that he suspected that Plaintiff was not trying in examination and was motivated to appear more disabled than he was); AR 250 (noting on intake form in March 2005 to rule out "secondary gain issues").) And when Plaintiff testified before the ALJ in 2007, he pretended to be falling asleep, apparently to buttress his testimony that he sleeps only thirty minutes a night and falls asleep every five or ten minutes during the day. (AR 19, 346.)[1]

With this backdrop, the Court turns to Plaintiff's complaint that the ALJ erred when he rejected treating psychiatrist Umakanthan's March 2005 diagnosis that Plaintiff suffered from major depressive

---

[1] The ALJ also pointed out that Plaintiff was able to care for a young child at home, frequently canceled or failed to show up for appointments, and repeatedly failed to comply with prescribed medications as reasons for questioning Plaintiff's credibility. (AR 358, 361.)

3

disorder and had a GAF of 40, which essentially translates into severe psychological impairment. The ALJ discounted these findings because they were based on Plaintiff's subjective claims and Plaintiff was not credible. (AR 357-59.) This is a legitimate reason to reject a treating psychiatrist's opinion, see Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 602 (9th Cir. 1999) (approving ALJ's rejection of treating and examining psychiatrists' opinions that were based on the claimant's statements because ALJ determined that claimant was not credible), and, as explained above, is well supported by the record.

Plaintiff argues that there was objective evidence supporting his ailments that was noted by Dr. Umakanthan. (Joint Stip. at 8-9.) He points out, for example, that Dr. Umakanthan noted that Plaintiff had poor eye contact, was withdrawn, exhibited psychomotor retardation, depression, flat affect, suicidal ideation, etc. (Joint Stip. at 9.) Plaintiff's argument is misplaced. All of these "objective" signs are not objective at all. They are subjective and controlled by Plaintiff. For example, to determine whether Plaintiff was harboring any thoughts about killing himself, Dr. Umakanthan presumably asked him, "Do you harbor any thoughts of killing yourself." And Plaintiff must have responded, "Yes." Dr. Umakanthan did not have any objective test to determine what Plaintiff was actually thinking.

Thus, Plaintiff's claim that the ALJ erred when he discounted Dr. Umakanthan's diagnosis is rejected. So, too, is his claim that the ALJ erred in rejecting examining psychiatrist Dr. Minh-Khoi Duong's findings that Plaintiff had a psychotic disorder and a GAF of 60. Dr. Duong's findings, like Dr. Umakanthan's, were based exclusively on Plaintiff's performance during the examination (AR 551-53), a performance that, albeit apparently convincing to Dr. Duong, was not a

true representation of Plaintiff's actual psychiatric state. As such, the ALJ's rejection of Dr. Duong's findings was supported by the law and the evidence and will not be disturbed.

For these reasons, the Agency's decision denying Plaintiff's application for benefits is affirmed and the case is dismissed with prejudice.

IT IS SO ORDERED.

DATED: September 21, 2011.

/s/ Patrick J. Walsh
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\MACKEY, K 1073\Memo_Opinion.wpd